UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

JEFF WALBURN, ET AL.,

        Plaintiffs,

vs.

Case No. 2:09-CV- 288
District Judge Sargus
Magistrate Judge Abel

LOCKHEED MARTIN UTILITY
SERVICES, INC.,

        Defendant.

## OPINION AND ORDER

Plaintiffs' Complaint in this case (Doc. 2) filed April 15, 2009, purports to assert five separate claims against Defendant Lockheed Martin Utility Services, Inc. (LMUS), a Delaware corporation, as operator of the gaseous uranium diffusion plant at Piketon, Ohio, under a contract with the United States Enrichment Corporation.[1] Plaintiff Jeff Walburn alleges that he "was continually employed as a security inspector" at that plant "from 1976 through 2008." Doc. 2, ¶ 13. In this position he allegedly was required "to work in and around processes that potentially expose[d] him to radiation and various gasses" (Id., ¶ 14), in connection with which he and certain other employees were required to submit to periodic urinalysis and

---

1. Created by amendments to 42 U.S.C. §§ 2297, *et seq.*, made by the Energy Policy Act of 1992, which provided, generally, for the Corporation's operation of, among others, the Piketon enrichment plant. The sections were then amended and added to by Public Law 104–134, April 26, 1996 (the USEC Privatization Act), which provided for privatizing of the Corporation and for repeal of then-existing provisions governing its operation (see §§ 2297 – 2297e-7) upon completion of that privatization. That officially occurred on July 28, 1998 (see Note following 42 U.S.C.A. § 2297), thus leaving present §§ 2297f, *et seq.*, generally in effect today.

dosimeter badge monitoring. Id., ¶¶ 14, 17 - 20.  Jeff Walburn alleges that "Defendant altered and/or destroyed . . . thousands of dosimeter records [including his] as a part of its regular policy and procedure" which has resulted in suspect and untrustworthy records. Id., ¶¶ 21 - 22. Further, he alleges that he suffered permanent injuries ultimately requiring hospitalization as the result of exposure to certain gasses[2] during a particular work assignment on July 26, 1994, after which incident he had received an "inadequate examination" by Defendant and was returned to work. Id., ¶¶ 24 - 30, 32. Finally, Plaintiffs allege that Defendant's records of this hospitalization episode have been altered. Id., ¶ 31.

The Complaint asserts that this Court has jurisdiction pursuant to both 28 U.S.C. §1331 (federal question) and §1332 (diversity of citizenship) (Doc. 2, ¶ 8) and sets out five separate claims as a basis for one or more forms of relief.  In the First Claim, labeled Breach of Contract, Plaintiff Jeff Walburn seeks damages for personal injury and injunctive relief both for himself and for members of a similarly-situated class of employees, based on various alleged violations by Defendant LMUS of its obligations and duties under a contract with "the United States Enrichment Program"[3] for operation of the Piketon plant. Id., ¶¶ 34 - 39.  In the Second Claim, labeled Violation of Federal Law, Plaintiff Jeff Walburn makes essentially the same claims for personal and class relief, based on the theory that Defendant's actions relative to health and safety violated 42 U.S.C. §2297f and that

---

2. At least chlorine trifluoride (ClF3) and fluorine (F2). Doc. 2, ¶ 25.

3. This is the phrase used in paragraph 34 of the Complaint, although Defendants presumably intend reference to the United States Enrichment *Corporation*. See ¶¶ 12, 36.

its alteration of his radiation and medical records violated a number of sections in Parts 19, 29 and 48 of the Code of Federal Regulations.[4] Doc. 2, ¶¶ 41- 44.. The Complaint's Third Claim, labeled Intentional Tort, is for Jeff Walburn's injuries that allegedly resulted from Defendant knowingly exposing him to dangerous gasses and requiring him to return to work in a dangerous area after he had complained of such exposure. Id., ¶¶ 46 - 48. The Complaint's Fourth Claim, labeled Loss of Consortium, is the claim of Plaintiff Karen Sue Walburn for her damages resulting from the injuries allegedly suffered by her husband. Id.,, ¶¶ 50 - 51. The Complaint's Fifth Claim, labeled Punitive Damages, is simply that: a separate claim on behalf of both Jeff Walburn and the class he seeks to represent that punitive damages are warranted, based on his claim that Defendant's alleged misconduct was "malicious and oppressive." Id., ¶ 53.

The case is now before the Court on Defendant LMUS's motion pursuant to Rule 12(b)(6), Fed. R. Civ. P., to dismiss Plaintiffs' Complaint for failure to state a claim upon which relief can be granted. Doc. 7. As summarized in its Reply Memorandum (Doc. 16, p.1), Defendant argues this is so for a combination of reasons: 1) the breach of contract claim is barred by Ohio's workers' compensation exclusive remedy statute (O.R.C. §4123.74), and even if it were not, the claim would still be barred by the applicable statute of limitations; 2) the violation of federal law claims necessarily fail because the federal statutes and regulations allegedly involved do

---

4. Ten C.F.R. §§ 19.12, 19.13; 29 C.F.R. §§ 19.96, 19.97; 48 C.F.R. §§ 952.223-75, 970.23, et seq., and 970.52. Doc. 2, ¶ 42. Earlier, under the heading "Venue and Jurisdiction" the Complaint also lists 42 U.S.C. §1983 (Id. ¶ 7), but that law is not relied on in this or any other claim.

3

not include a private right of action, and even if they did, the claims would still be barred by the applicable statute of limitations;[5] and 3) the intentional tort claim is barred by the applicable statute of limitations. Defendant also accurately notes that Plaintiffs' response to these arguments for dismissal does not dispute, or offer contrary argument to, any of them except those respecting application of the statute of limitations Doc. 16, p. 1.

The Defendant's "motion under Rule 12(b)(6) tests whether a claim has been adequately stated in the complaint." Broyde v. Gotham Tower, Inc., 13 F.3d 994, 996-97 (6th Cir. 1994) (quoting Nishiyama v. Dickson County, Tenn., 814 F.2d 277, 279 (6th Cir.1987) (en banc)). In considering such a motion, the court must construe the complaint liberally in the non-movant's favor and accept all factual allegations and permissible inferences therein. See Westlake v. Lucas, 537 F.2d 857, 858 (6th Cir. 1976); Allard v. Weitzman (In Re DeLorean Motor Co.), 991 F.2d at 1236, 1240 (6th Cir. 1993; Mayer v. Mylod, 988 F.2d 635, 638.(6th Cir. 1993). However, the court is not required to accept as true unwarranted factual inferences or legal conclusions couched as factual allegations. See Papasan v. Allain, 478 U.S. 265, 286 (1986); Morgan v. Church's Fried Chicken, 829 F.2d 10, 12 (6th Cir.1987). Further, although Fed. R. Civ. P. 8(a)(2)'s basic requirement of a "short and plain

---

5. Defendant also asserts that such claims would be barred by Ohio's workers' compensation exclusive remedy law, but if Congress had provided an unqualified private right of action for violation of any of the federal provisions in question, it appears such rights would be insulated from control of Ohio law by the Supremacy Clause (Art. VI, cl. 2) of the United States Constitution. See Rose v. Arkansas State Police, 479 U.S. 1, 3, (1986) ("There can be no dispute that the Supremacy Clause invalidates all state laws that conflict or interfere with an Act of Congress.").

4

statement of the claim showing that the pleader is entitled to relief" means that a complaint need not contain detailed factual allegations, it is now also clear that something more than an "unadorned, the-defendant-unlawfully-harmed-me accusation" is required. Bell Atlantic Corp. v. Twomley, 550 U.S. 544, 555, 1955 (2007) (citing Papasan at 286). As recently further explained by the Court in discussing its Twomley opinion:

> . . . . Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not "show[n]"-"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

Ashcroft v. Iqbal, ___ U.S. ___, 129 S.Ct. 1937, 1950, 2009 WL 1361536 *13 (2009).

In sum, the motion to dismiss under Rule 12(b)(6) tests whether, considered in accordance with above standards, the complaint has stated a claim for which the law provides relief. See Gazette v. City of Pontiac, 41 F.3d 1061, 1064 (6th Cir. 1994). The motion will be therefore be granted where that test reveals a failure to sufficiently state a claim for the sort of relief sought, or where there is an absence of law to provide relief for such claim as is sufficiently stated, or where in light of existing law the face of the complaint reveals an insurmountable bar to granting the relief sought. See Rauch v. Day & Night Mfg. Corp., 576 F.2d 697, 702 (6th Cir.1978); LRL Properties v. Portage Metro Housing Authority, 55 F.3d 1097 (6th Cir. 1995).

With respect to Plaintiffs' federal question claim based on alleged violation

5

of various federal statutes and regulations, Defendant points out that none of those expressly creates a private right of action and to the basic rule that "the fact that a federal statute has been violated and some person harmed does not automatically give rise to a private cause of action in favor of that person." Cannon v. University of Chicago, 441 U.S. 677, 688 (1979). As to the more specific question whether a private litigant might seek enforcement of the Atomic Energy Act or its attendant agency standards and regulations, almost 30 years ago the Fifth Circuit held that "the enforcement scheme of the Act precludes such actions." Liesen v. Louisiana Power & Light Co. 636 F.2d 94, 95 (5th Cir. 1981) (citing 42 U.S.C. § 2271(c)[6] and Susquehanna Valley Alliance v. Three Mile Island Nuclear Reactor, 619 F.2d 231, 238-39 (3rd Cir. 1980)). This rule has been reaffirmed in two, more recent district court opinions relied on by Defendant: Brown v. Northeast Nuclear Energy Co., 48 F.Supp.2d 116, 122 (D.Conn.1999) ("The regulations and Act do not create a private remedy but rather 42 U.S.C. § 2271(c) expressly limits a private party's right to remedy violations."); Barrientos v. UT-Battelle, LLC, 284 F.Supp.2d 908, 915 (S.D. Ohio 2003):

> ... [B]ecause none of the statutes or regulations that Defendants cite creates a cause of action, the Court finds that Plaintiffs' second claim for relief does not create federal question jurisdiction. In fact, the Court is not convinced that Plaintiffs' second claim for relief states a claim upon which relief can be granted at all.

---

6. That section provides in part: "No action shall be brought against any individual or person for any violation under this chapter unless and until the Attorney General of the United States has advised the Commission with respect to such action and no such action shall be commenced except by the Attorney General of the United States...."

6

As Defendant points out in its reply memorandum (Doc. 16, pp. 1-2), Plaintiffs have not opposed this argument for dismissal or identified any specific provisions of federal law as exceptions to the general rule indicated by the above cases. On the basis of this unchallenged authority and the arguments of Defendant, the Court therefore concludes that, as to this claim, there is no federal law providing the relief Plaintiffs seek for the circumstances they allege and that, consequently, their claim should be dismissed. The Court further notes that because this is the Complaint's only claim based on alleged violation of federal law, the Court now lacks federal question jurisdiction, see Heydon v. MediaOne of Southeast Michigan, Inc., 327 F.3d 466, 471-72 (6th Cir. 2003)[7], and its further consideration of the case must be based on, and guided by, the law applicable to its diversity jurisdiction.[8]

With respect to the Complaint's third-party-beneficiary, breach-of-contract claim based on Defendant LMUS' alleged failure to perform various duties and obligations under its contract with U. S. Enrichment Corp., Defendant argues that the claim is barred by provisions of Ohio workers' compensation law. That law is contained in Chapter 4123 of the Ohio Revised Code, which includes the following, so

---

7. '*Merrell Dow* [*Pharmaceuticals Inc. v. Thompson,* 478 U.S. at 814] said that Congress's failure to set out a private remedy for violations of the federal statute at issue was "tantamount to a congressional conclusion that the presence of a claimed violation of the statute as an element of a state cause of action is insufficiently 'substantial' to confer federal-question jurisdiction." '

8. In a diversity case, this Court applies the substantive law of the State of Ohio as interpreted by its highest court. See Northland Insurance Co. v. Guardsman Products, Inc., 141 F.3d 612, 617 (6th Cir. 1998); Imperial Hotels Corp. v. Dore, 257 F.3d 615, 620 (6th Cir. 2001).

7

called, "exclusive remedy" provision:

> Employers who comply with section 4123.35 of the Revised Code shall not be liable to respond in damages at common law or by statute for any injury, or occupational disease, or bodily condition, received or contracted by any employee in the course of or arising out of his employment, or for any death resulting from such injury, occupational disease, or bodily condition . . . whether or not . . . compensable under [this chapter].

O.R.C. §4123.74. Defendant does not cite, and the Court has not found, any Ohio Supreme Court authority specifically ruling on whether this provision applies to bar contract claims such that made by Plaintiffs here. However, Defendant has cited three Ohio Court of Appeals rulings this Court finds persuasive on that question,[9] each concluding that such claims are barred. See Stone v. North Star Steel Co., 152 Ohio App.3d 29, 38-39, 786 N.E.2d 508, 515 (Ohio App. 7 Dist., 2003) (Workers' compensation laws barred employee's third-party-beneficiary claim based on alleged breach of complying employer's contract with owner of premises where employee's injury occurreed.); Monnin v. Larger Constr. Co., 102 Ohio App.3d 228, 656 N.E.2d 1348 (Ohio App. 3 Dist., 1995); Blanton v. City of Marion, No. 9-97-88, 1998 WL 255573 at *6 (Ohio App., Marion Co., May 20, 1998) (citing Monnin).

On the basis of this unchallenged authority and the arguments of Defendant, the Court concludes that, as to this state contract-law claim, the face of the Complaint reveals there is an insurmountable bar in Ohio's workers compensation

---

9. In diversity cases, if the state's "highest court has not spoken, the federal court must ascertain from all available data what the state law is and apply it. If the state appellate court announces a principle and relies upon it, that is a datum not to be disregarded by the federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." Northland Ins. Co., 141 F.3d at 617.

exclusive remedy statute (O.R.C. §4123.74) to granting the relief sought by Plaintiffs and that this claim should therefore also be dismissed.

As to Plaintiff's third claim, however, there is no dispute that the exclusive remedy provision of Ohio's Workers' Compensation Act does not operate to bar an otherwise adequately stated claim based on alleged intentional tort. See <u>Blankenship v. Cincinnati Milacron Chemicals, Inc.</u>, 69 Ohio St.2d 608, 433 N.E.2d 572 (1982); <u>Jones v. VIP Dev. Co.</u>, 15 Ohio St.3d 90, 472 N.E.2d 1046 (1984). The parties also agree this claim is identical to the intentional tort claim made by Plaintiffs in Case No. C2-96-722 filed in this Court in July 1996 and later voluntarily dismissed by them on July 15, 1997. See Doc. 7, p. 3; Doc. 11, p. 2. Further, there appears no dispute that the basically applicable limitations period is provided by Ohio's two-year statute.[10] See <u>North Star Steel</u>, 152 Ohio App.3d at 34 (citing <u>Funk v. Rent-All Mart, Inc.</u>, 91 Ohio St.3d 78, 724 N.E.2d 127 (2001). Because they admittedly filed the identical claim in their previous case, thus showing they were aware of their cause of action in 1996 or before, Plaintiffs concede that their claim filed here in 2009 is barred by the limitations statute "unless Defendant is *estopped* from arguing the statute of limitations claim." Doc. 11, p. 3. Plaintiffs both plead (Doc. 2, ¶¶ 54 - 58) and argue (Doc. 11, pp. 3 ff.). that the Defendant *is* so estopped

---

10. "If the case is a diversity jurisdiction case, *Guaranty Trust Co. of N.Y. v. York*, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945), requires the federal court to apply the [State] statute of limitations under the *Erie* doctrine. See also *Atkins v. Schmutz Mfg. Co.*, 372 F.2d 762, 764 (6th Cir.1967) (holding that "[i]n diversity cases the law of the State in which a federal court sits must be followed with respect to the statute of limitations" (citing *Guaranty Trust* ))." <u>Consolidated Rail Corp. v. Yashinsky</u>, 170 F.3d 591, 594 (6th Cir. 1999)

9

by virtue of its failure to produce five specific documents in discovery in Plaintiffs' 1996 case. Copies of the documents in question are attached to Plaintiff Jeff Walburn's affidavit, which is Exhibit B to Defendant's Memorandum Contra the motion to dismiss, Doc. 11.

Although it is not always possible to rule on affirmative defenses as a basis for dismissal under Rule 12(b)(6), both federal and Ohio courts hold that the same is possible where the Complaint and other materials the court may properly consider make the bar of limitations apparent. See New England Health Care Employees Pension Fund v. Ernst & Young, LLP, 336 F.3d 495, 501 (6th Cir. 2003); Steiner v. Steiner, 85 Ohio App.3d 513, 518-519, 620 N.E.2d 152, 156 (Ohio App. 4 Dist.,1993). In light of the materials the Court may properly consider here (see generally Jackson v. City of Columbus, 194 F.3d 737, 745 (6th Cir.1999), abrogated on other grounds, Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002); Weiner v. Klais and Co., Inc.,108 F.3d 86, 89 (6th Cir. 1997)), this appears to be such a case, unless the doctrine of equitable estoppel operates to prevent this Defendant's use of the limitations statute in these particular circumstances.

In their arguments on this ultimate question, the parties have relied largely on federal court authority. However, most, if not all, of that authority is found in federal-question cases[11] interpreting and applying federal law; and, as explained in notes 9 and 10 above, in this diversity case, the Court is obligated to apply the substantive law of Ohio – here the Ohio statute of limitations – as interpreted by

---

11. An exception is Twee Jonge Gezellen, Ltd. v. Owens-Illinois, Inc., (unpublished) 238 Fed. Appx. 159, 2007 WL 2141929 (6th Cir. 2007), discussed below.

rulings of the Ohio courts.[12] This Court therefore considers it more appropriate to consult and apply Ohio authority, if possible, in deciding the issue presented by this claim.

There is no question that Ohio courts recognize and will apply principles of equitable estoppel in a proper case. See Doe v. Archdiocese of Cincinnati,, 116 Ohio St.3d 538, 880 N.E.2d 892 (2008).

> The concept of estoppel is little changed since the mid-19th century, when we stated, "As a general rule, a party will be concluded from denying his own acts or admissions, which were expressly designed to influence the conduct of another, and did so influence it, and when such denial will operate to the injury of the latter." *McAfferty v. Conover's Lessee* (1857), 7 Ohio St. 99, 105, 1857 WL 15.

Id. at 539. Further, it is clear that:

> [u]nder Ohio law, the doctrine of equitable estoppel may be employed to prohibit the inequitable use of the statute of limitations. *Hutchinson v. Wenzke* (1999), 131 Ohio App.3d 613, 615, 723 N.E.2d 176, 177; *Walworth v. BP Oil Co.* (1996), 112 Ohio App.3d 340, 345, 678 N.E.2d 959, 962-963; *Schrader v. Gillette* (1988), 48 Ohio App.3d 181, 183, 549 N.E.2d 218, 220-221.

Helman v. EPL Prolong, Inc., 139 Ohio App.3d 231, 246, 743 N.E.2d 484, 495 (Ohio App. 7 Dist.,2000). However, as several Ohio Courts of Appeals have noted, in addition to the doctrine's general pleading requirements,[13] there are particular limitations when a Plaintiff seeks to use the doctrine to avoid limitations.

> .... Furthermore, in the context of a statute-of-limitations defense, a plaintiff must show either "an affirmative statement that the statutory

---

12. So long as no federal constitutional rights are infringed, the Ohio courts are free to apply its limitations statutes as they determine is proper under Ohio's constitution and laws.

13. See, e..g., Doe v. Blue Cross/Blue Shield of Ohio, 79 Ohio App.3d 369, 379 (1992 (1992); State ex rel. Ryan v. State Teachers Retirement Sys., 71 Ohio St.3d 362, 368 (1994).

11

period to bring an action was larger than it actually was" or "promises to make a better settlement of the claim if plaintiff did not bring the threatened suit" or "similar representations or conduct" on defendant's part. *Cerney v. Norfolk & W. Ry. Co.* (1995), 104 Ohio App.3d 482, 488, 662 N.E.2d 827, 831. See, also, (1996) *Walworth v. BP Oil Co.* (1996), 112 Ohio App.3d 340, 678 N.E.2d 959. 112 Ohio App.3d 340, 678 N.E. 2d 959.

Helman at 246; see also, JRC Holdings, Inc. v. Samsel Servs. Co., 166 Ohio App. 3d 328, 335, 850 N.E.2d 773, 779 (Ohio App. 11 Dist., 2006) (citing Helman).

Although the more recent rulings of the Ohio Supreme Court do not speak directly to this restriction on the doctrine's employment to avoid a defendant's use of the limitations defense, neither are those rulings inconsistent with such a restriction, *i.e.*, that the doctrine properly applies to the bar of limitations only where a defendant has affirmatively misrepresented the length of applicable limitations or the need to bring suit in order to recover. See, e. g., Doe v. Archdiocese of Cincinnati, 109 Ohio St.3d 491, 849 N.E.2d 268, 279 (2006) ("It is therefore fundamental to the application of equitable estoppel for plaintiffs to establish that subsequent and specific actions by defendants somehow kept them from timely bringing suit * * *." (quoting Zumpano v. Quinn, 6 N.Y.3d 666, 674 (2006), 849 N.E.2d 926)); Doe v. Archdiocese of Cincinnati, 116 Ohio St.3d 538, 540, 880 N.E.2d 892, 895 (2008) ("[E]quitable estoppel will benefit Doe only if she has pleaded facts that, if proved, will demonstrate the efforts of the Archdiocese to prevent her from filing a lawsuit."). The same is true of the Sixth Circuit's recent application of Ohio limitations law in Twee Jonge (see note 11, above) (In order to apply the doctrine to the statute of limitations, a party must show that the misrepresentation "was calculated to

12

induce a plaintiff to forgo the right to sue." (quoting Hoeppner v. Jess Howard Elec. Co., 150 Ohio App.3d 216, 225, 780 N.E.2d 290, 297 (Ohio App. 10 Dist., 2002)), 2007 WL 2141929 at **4.

In this case, the alleged misrepresentation in question ("With the exception of those materials contained within Exhibits A and B, LMUS is aware of no such documents.") was a written response by Defendant to Plaintiffs' discovery request to:

> Produce any and all notices, internal memorandums, written communications or other written materials that discuss the potential exposure of security personnel at the uranium gaseous diffusion plant near Piketon, Ohio to any of the materials used to shoot a cell.

See Doc. 11, p. 2. Both the request and the response occurred in Case No. C2-96-722 (now 2:96-CV-722), Plaintiffs' previous, largely identical, case against this Defendant, which was voluntarily dismissed by them in 1997, almost 12 years before this case was filed. Assuming that the discovery response in question was factually misleading insofar as it suggests no responsive materials existed[14] and that it contributed to Plaintiffs' decision to voluntarily dismiss that earlier suit, such discovery response can in no way be characterized as a misrepresentation of the length of applicable limitations or of Plaintiffs' need to bring or continue suit in order to recover. That former law suit was already on file, presumably within the applicable limitations, and there is nothing before the Court from which it might find anything more than an inadequate discovery response by Defendant in that case, certainly not a misrepresentation concerning limitations, offered as inducement not to file

---

14. The Court notes that the response does not go so far as to deny existence of such materials, only stating that Defendant then had no knowledge of such materials.

13

that law suit, or another one thereafter.

However Defendant's discovery response in Plaintiffs' earlier case may reasonably be characterized, this Court has already concluded that "there is no fraud upon the court or other egregious act apparent ... as might otherwise warrant the relief Plaintiffs seek under either Rule 60(b) or (d)." Case No. 2:96-CV-722, Doc. 37, Opinion and Order, p. 6. That ruling was made in denying Plaintiffs' motions in effect to reopen the 1996 case and consolidate it with this one, based on the same mistaken discovery response. The response in question is also not a misrepresentation as to the length of limitations or the necessity of timely proceedings in order to pursue Plaintiffs' claims; therefore, Defendant is also not estopped from raising the statute's bar to untimely proceedings now.

Because all of Plaintiff Jeff Walburn's claims thus fail, so do any remaining claims of the Complaint.. With respect to Plaintiff Karen Sue Walburn's Fourth Claim:

> . . . . Generally, a loss of consortium claim is a derivative claim dependent upon the existence of a primary claim, and it can be maintained only so long as the primary claim continues. *Martinez v. Yoho's Fast Food Equip.*, Franklin App. No. 02AP-79, 2002-Ohio-6756, 2002 WL 31752047, at ¶ 27, quoting *Messmore v. Monarch Mach. Tool Co.* (1983), 11 Ohio App.3d 67, 68-69, 11 OBR 117, 463 N.E.2d 108. Because a derivative claim cannot afford greater relief than that relief permitted under a primary claim, a derivative claim fails when the primary claim fails. *Id.*

Keller v. Foster Wheel Energy Corp., 163 Ohio App.3d 325, 330, 837 N.E.2d 859, 863-64 (Ohio App. 10 Dist., 2005). Plaintiff has never moved to certify the class he alleges is similarly situated, but any such motion would be denied in view of his

failure successfully to state any cause of action himself. Finally, and based on that same failure, the Complaint also cannot possibly state an adequate claim for punitive damages.

For the reasons stated above, Defendant's motion pursuant to Rule 12(b)(6), Fed. R. Civ. P., (Doc. 7) is GRANTED, whereupon the Plaintiffs' Complaint herein (Doc. 2) is DISMISSED. Further, Plaintiffs, pending motion for additional time to conduct discovery (Doc. 18) is DENIED as moot and this case is closed.

IT IS SO ORDERED.

3-30-2010
Dated

Edmund A. Sargus, Jr.
United States District Judge